IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MULTIPLA LIMITED, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | |
| THE INDIVIDUALS, BUSINESS ENTITIES, | § | CIVIL ACTION NO. 4:25-CV-00622 |
| and UNINCORPORATED ASSOCIATIONS | § | JUDGE MICHAEL J. TRUNCALE |
| IDENTIFIED ON EXHIBIT 1, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**ORDER GRANTING IN PART PLAINTIFF MULTIPLA LIMITED'S *EX PARTE* MOTION FOR, AND MEMORANDUM IN SUPPORT OF, ENTRY OF (1) TEMPORARY RESTRAINING ORDER, (2) EXPEDITED DISCOVERY ORDER, AND (3) ASSET RESTRAINING ORDER**

Before the Court is Plaintiff Multipla Limited ("Multipla")'s *Ex Parte* Motion for, and Memorandum in Support of, Entry of a (1) Temporary Restraining Order, (2) Expedited Discovery Order, and (3) Asset Restraining Order. [Dkt. 6].[1] Multipla filed its motion before Judge J. Campbell Barker on June 10, 2025. *Id.* On June 13, 2025, Judge Barker recused himself from the case under 28 U.S.C. § 455 and the matter was assigned to the undersigned. [Dkt. 10]. The motion is now ripe for review.

For the reasons stated below, the motion is **GRANTED IN PART**.

I.   BACKGROUND

This is a copyright infringement case. *See generally* [Dkt. 1]. Multipla is a New Zealand limited company engaged in the business of designing, manufacturing, distributing, and retailing its unique fabric-cutting device throughout the world, including within the Eastern District of Texas. *Id.* at ¶¶ 1, 14. Multipla

---

[1] Multipla's motion technically violates the local rules. It improperly fuses a motion for temporary restraining order with a motion for expedited discovery—since Multipla is not seeking relief in the alternative, these should be separate filings. *See* E.D. Tex. Loc. Civ. R. 7(a) (emphasis added) ("Each pleading, motion, or response to a motion *must be filed as a separate document*, except for motions for alternative relief (e.g., a motion to dismiss or, alternatively, to transfer)."). The Court will overlook this technicality in the interest of expediency.

has copyrights to photographs, artwork, and videos[2] and uses this media ("Copyright Media") to sell and promote its products. *Id.* at ¶¶ 4, 15.

Multipla maintains strict quality control standards for all its products. *Id.* at ¶ 17. It sells its products online via the ragcutter.co.nz website, which features proprietary content exclusive to Multipla—including the Copyright Media. *Id.*; *see also* [Dkt. 3-9]. Multipla has sold tens of thousands of units of its products over the years to consumers around the world, and it has expended substantial time, money, and other resources developing, advertising, and promoting the products through use of the Copyright Media. [Dkt. 1 at ¶ 18].

The Defendants in this matter (Does 1-418) are individuals, business entities of unknown makeup, or unincorporated associations, each of whom, on information and belief, likely reside or operate in foreign jurisdictions. *Id.* at ¶ 2; *see* [Dkt. 3 (providing a list of 418 "merchants" with their associated "merchant IDs")]. Defendants allegedly operate through commercial webstores that are hosted on various e-commerce platforms, such as Alibaba, AliExpress, Amazon, CJDropshipping, eBay, Shein, Temu, and Walmart. *See generally* [Dkt. 3].

Allegedly, Defendants have used the Copyrighted Media to sell knockoff products to consumers within the United States, including within Texas and the Eastern District of Texas. [Dkt. 1 at ¶¶ 4, 5].



---

[2] U.S. Copyright Registration No. VA 2-427-012 for the "RAG-1" photograph; U.S. Copyright Registration No. VA 2-427-025 for the "RAG-8" photograph; U.S. Copyright Registration No. VA 2-427-026 for the "RagCutter 2021" group registration of 3 photographs; U.S. Copyright Registration No. VA 2-427-027 for the "RAG-4" 2-D artwork; and U.S. Copyright Registration No. PAu 4-247-766 for the "RAG-VIDEO-2" video. *See* [Dkt. 1 at ¶ 4; Dkt. 3-7; Dkt. 3-8].

*Id.* at ¶ 21. Multipla alleges that Defendants have worked in concert and have purposefully concealed their identities and the full scope of their infringing activities. *Id.* at ¶¶ 6–7. Multipla never approved of the Defendants' sales, nor did it give them permission to use the Copyright Media. *Id.* at ¶ 23. Multipla alleges that it has suffered and will continue to suffer irreparable harm from these knockoff transactions. *Id.* at ¶¶ 25–26.

On these facts, Multipla brings a claim for copyright infringement under 17 U.S.C. § 501. *Id.* at ¶¶ 28–36. Multipla files the present motion to obtain a temporary restraining order that prevents Defendants from displaying the Copyright Media on webstores and e-commerce platforms and restricts their ability to transfer assets. [Dkt. 6 at 5]. Multipla also requests expedited discovery to inspect and copy Defendants' records related to their use of the Copyright Media. *Id.*

## II.   LEGAL STANDARDS

### a.   Motion for *Ex Parte* Temporary Restraining Order

The standard for issuance of an *ex parte* temporary restraining order has both procedural and substantive elements. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." FED. R. CIV. P. 65(b)(1)(A)-(B).

As to the substantive requirement, courts apply the same standard for temporary restraining orders as they do for preliminary injunctions. A party requesting a temporary restraining order must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Emerald City Mgmt., L.L.C. v. Kahn*, 641 F. App'x 410, 413 (5th Cir. 2016).

### b. Motion for Expedited Discovery

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)." FED R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order." *Id.* Courts in this circuit apply a "good cause" standard to determine whether such an order should issue. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (applying good cause standard); *Cothran v. Koomson*, No. 4:20- CV-481-SDJ, 2020 WL 6450498, at *1 (E.D. Tex. Nov. 3, 2020) (Jordan, J.) (collecting cases). Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *St. Louis Grp.*, 275 F.R.D. at 239.

### III. DISCUSSION

#### a. Temporary Restraining Order

##### i. Procedural Requirements

Multipla has satisfied the procedural requirements for a temporary restraining order in this case. First, Multipla presents the declaration of Justin Long, the co-owner of Multipla, to show that it will suffer irreparable harm absent a temporary restraining order ("Long Declaration"). *See* [Dkt. 6-2]. The Long Declaration provides that Multipla's Rag Cutter products have accumulated substantial consumer goodwill on an international scale. *Id.* at ¶ 6. From his own investigations, Long discovered that 418 infringers (i.e., the Defendants) have marketed, advertised, and sold Rag Cutter products through unauthorized use of the Copyright Media. *Id.* at ¶ 11. Defendants' products are priced lower than genuine Rag Cutter products and are of inferior quality. *Id.* at ¶ 12. The Long Declaration states that Multipla is losing around $400,000.00 in sales each year as a direct result of the infringing activity. *Id.* at ¶ 13. The sales are also doing irreparable damage to Multipla's reputation and goodwill. *Id.* at ¶ 14. The Long Declaration states that it is crucial to restrain Defendants' assets to prevent dissipation and other bad faith conduct which Defendants would commit upon receiving notice of the suit. *Id.* at ¶ 15.

Multipla also provides the declaration of its counsel of record, Charles A. Wallace ("Wallace Declaration"), to satisfy FED. R. CIV. P. 65(b)(1)(B). *See* [Dkt. 6-3]. The Wallace Declaration states that

Multipla cannot give notice to Defendants because the email addresses they use to operate and withdraw money from the infringing webstores are either not publicly available. *Id.* at ¶ 6; *see also* [Dkt. 6-2 at ¶ 16]. Additionally, it explains that notice should not be required in this instance because Defendants "are highly likely to transfer data, content, products, and financial assets to other webstores and accounts if they find out about these proceedings before the relief requested in Plaintiff's Motion is granted." [Dkt. 6-3 at ¶ 7]. Wallace states that his firm is experienced in handling international infringement operations and that defendants consistently dispose of funds and hide infringing materials upon receiving notice of suits. *Id.* at ¶ 8. The Wallace Declaration convinces the Court that "notice to the defendant would render fruitless further prosecution of the action." *Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-179, 2017 U.S. Dist. LEXIS 188249, at *3 (E.D. Tex. Oct. 19, 2017) (citation and internal quotation marks omitted).

The Court concludes that Multipla has scaled Rule 65(b)(1)'s procedural hurdles.

### ii. Substantive Requirements

Multipla has satisfied the substantive requirements as well. A plaintiff is likely to succeed on a copyright infringement claim if it establishes: (1) ownership in a valid copyright and (2) copying by the defendant. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1007–08 (5th Cir. 1991) ("To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities."). Copying can be proven through direct evidence of copying or through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the works are "probatively" similar. *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141–42 (5th Cir. 2004). Access need not be shown where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142.

As shown by the registrations with the U.S. Copyright Office, the Copyright Media is wholly original and proprietary to Multipla. *See* [Dkt. 3-7]. Multipla never gave Defendants permission to use the Copyright Media. Multipla has created and marketed its fabric-cutting devices with the Copyright Media since 2020, circumstantially establishing Defendants' access to the media. Further, from a basic side-by-side comparison, a layman would gather that the Copyright Media and Defendants' media is not only probatively similar, but

5

substantially similar. *See* [Dkt. 1 at ¶ 21]. And Multipla has meticulously documented hundreds of infringements. *See* [Dkt. 3; Dkt. 3-1; Dkt. 3-2; Dkt. 3-3; Dkt. 3-4; Dkt. 3-5; Dkt. 6-2 at ¶ 11]. For these reasons, Multipla is likely to succeed on the merits of its copyright infringement claim.

Courts in this circuit have found that "[w]hen a plaintiff seeks an injunction under the Copyright Act, the plaintiff establishes *a rebuttable presumption of irreparable harm* when the plaintiff shows that a valid copyright has been infringed." *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, No. CIV.A.4:04-CV-445-Y, 2004 WL 2187143, at *2 (N.D. Tex. Sept. 28, 2004) (emphasis added) (citing *Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979)); *Sony/ATV Publ'g, LLC v. Marcos*, 651 F. App'x 482, 487 (6th Cir. 2016) ("In a copyright-infringement action a plaintiff establishes a rebuttable presumption of irreparable harm by demonstrating a likelihood of success on the merits."). Further, where a plaintiff proves a substantial likelihood of success on the merits of a copyright infringement claim, "a [temporary restraining order] should not be denied simply because plaintiffs can recover monetary damages[.]" *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, No. CA3-88-0333-D, 1988 WL 161314, at *2 (N.D. Tex. Dec. 14, 1998) (Fitzwater, J.).

Defendants' infringing use of the Copyright Media has and continues to irreparably harm Multipla by depriving it of the ability to control use and licensing of the media and by preventing Multipla from enjoying the exclusive rights conferred by the Copyright Act. *See* 17 U.S.C. § 106. Such loss of control over the Copyright Media is neither calculable nor precisely compensable, thus warranting an immediate halt to Defendants' infringing activities. Further, Multipla has established a rebuttable presumption of irreparable harm by virtue of demonstrating a likelihood of success on the merits. As such, Multipla has satisfied the "irreparable harm" factor.

Courts in this circuit have found for over 25 years that the balance of hardship supports protecting a plaintiff's copyright. *See, e.g.*, *Olan Mills, Inc.*, 1988 WL 161314, at *3; *see also Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351, 357 (N.D. Tex. 1986). Multipla is entitled to protect the integrity of its intellectual property and its Copyright Media, and it continues to suffer hardship as long as Defendants are using, reproducing, and displaying the Copyright Media. As infringers, Defendants are entitled to little

equitable consideration, for the only hardship they would face would be to simply cease their infringing conduct. Thus, the balance of equities tips decisively in Plaintiff's favor.

There is a public interest in preserving rights provided by federal copyright law. *Lakedreams*, 932 F.2d at 1110. Further, courts in this district have found that the public interest "is always served by requiring compliance with Congressional statutes . . . and by enjoining [infringement]." *Gibson Brands, Inc. v. Armadillo Distribution Enters., Inc.*, No. 4:19-CV-358, 2022 WL 3008501, at *4 (E.D. Tex. July 28, 2022) (Mazzant, J.) (citation omitted). The public interest factor thus also weighs in favor of an injunction because the public interest—and the Copyright Act itself—would be undermined if Defendants' infringing conduct is allowed to persist. Restraining Defendants will therefore advance the public interest by protecting copyrighted works and preserving the integrity of the Copyright Act.

### iii. Specific Requests

Having run through the procedural and substantive requirements for a temporary restraining order, the Court also finds that Multipla's specific requests (regarding what is to be restrained) are appropriate.

An Order restraining Defendants from reproducing or displaying the Copyright Media would halt the ongoing economic and reputational harm to Multipla. This request is all the more urgent since Defendants operate on an international scale. An asset freeze is also justified here. On information and belief, Defendants hold most of their assets in China. *See* [Dkt. 6-2 at ¶ 15]. An asset restraining order is crucial to maintain the status quo and protect Multipla's right to an equitable accounting (or disgorgement).[3] *See Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *see also Prep Sols., Ltd. v. Leicht*, No. 222CV00123JRGRSP, 2022 WL 1812298, at *2 (E.D. Tex. June 2, 2022) (Gilstrap, J.) (citations omitted);

---

[3] Technically, neither equitable accounting and disgorgement are technically not mentioned by name in the Complaint. Multipla only explicitly references statutory damages and costs and attorney's fees. *See* [Dkt. 1 at 8].

However, Multipla does allege that Defendants have illegally obtained profits. *Id.* at ¶ 31. This would put a reasonable defendant on notice that equitable remedies might be on the table. *See* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014) (emphasis added) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)) (explaining that a complaint "need only set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief' and provide the defendant with '*fair notice* of what the plaintiff's claim is and the grounds upon which it rests.'").

*see also Viral DRM LLC v. YouTube Uploaders Listed on Schedule A*, No. 3:23-CV-05594-JSC, 2023 WL 9502957, at *1 (N.D. Cal. Nov. 29, 2023).

### b. Expedited Discovery

Multipla requests expedited discovery so that it may discover Defendants' names and email addresses for service of process, their online webstores, and their financial institutions and payment processors for purposes of enforcing orders from this Court. This request is in need of some narrowing.

Courts in this circuit weigh several factors in balancing the need for disclosure of a defendant's information against the First Amendment expectation of privacy. These factors include: "(1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy." *Funimation Ent. v. Does 1 - 1,427*, No. 2:11-CV-269, 2012 WL 12897376, at *2 (E.D. Tex. Mar. 16, 2012).

As explained on the likelihood of success on the merits factor above, Multipla has made a prima facie showing of copyright infringement.

The second factor leans against Multipla. The focus at this juncture should be obtaining information needed to identify and serve the Defendants.[4] Multipla's request blows past that boundary and dips, with a sizeable ladle, into merits discovery and other post-service issues. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 164 (D.D.C. 2015) ("Because plaintiffs are effectively asking the Court to allow them to conduct merits discovery—i.e. discovery that seeks to establish the truth of their allegations . . . the Court finds that the proposed discovery is not at all narrowly tailored to discovering the identity of Doe defendants."); *see also OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, No. 4:16-CV-350, 2016 WL 3747222, at *4 (E.D. Tex.

---

[4] *See Strike 3 Holdings, LLC v. Doe*, No. 1:18-CV-12585-NLH-JS, 2020 WL 3567282, at *8 (D.N.J. June 30, 2020) (collecting cases); *see also Ent. v. Does 1 - 1,427*, No. 2:11-CV-269, 2012 WL 12897376, at *1, *2 (E.D. Tex. Mar. 16, 2012) (emphasis added) (holding that the plaintiff's request for names, addresses, telephone numbers, email addresses, and Media Access Control addresses corresponding to IP addresses "[was] sufficiently specific to establish a reasonable likelihood that the discovery request *would lead to identifying information that would make possible service upon particular defendants*[.]"); *see also Strike 3 Holdings, LLC v. Doe*, No. 4:22-CV-459-SDJ, 2024 WL 1053249, at *2 (E.D. Tex. Mar. 11, 2024) (Jordan, J.) (citing *Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-CV-00509, 2012 WL 6684711, at *2 (E.D. Tex. Dec. 21, 2012) (Gilstrap, J.)).

July 13, 2016) (Mazzant, J.) (collecting cases holding that parties may not request expedited discovery to broadly obtain information needed to prove up their cause of action).

To illustrate, Multipla requests Defendants produce information about the total "*quantity of products* that they have sold using [the Copyright Media]" and "the *location* to where each such product *was shipped*." [Dkt. 6-1 at 3 (emphasis added)]. Similarly, Multipla asks third-party financial service providers to produce information regarding "the *nature of* Defendants' operations[.]" *Id.* at 4 (emphasis added). And that's not all. Multipla requests these same service providers to provide "a *full and detailed accounting* of Defendants' sales and listing history related to the Infringing Webstores," "a *separate full accounting* of Defendants' sales and listing history related to the sale of the products Defendants' have offered . . . in connection with the [Copyright] Media (including, without limitation, the quantity of products sold and the physical addresses to which said products were shipped)," and even requests them to turn over information concerning "*any financial accounts* owned and controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them[.]" *Id.* at 4–5 (emphasis added). Granting these sweeping requests would blur the line between expedited discovery and the formal discovery process, eroding the rule that expedited discovery is "not the norm." *Missouri v. Biden*, No. 3:22-CV-01213, 2022 WL 2825846, at *5 (W.D. La. July 12, 2022).

The third and fourth factors favor expedited discovery. Multipla has obtained all the information it can through informal discovery means and will be unable to properly serve Defendants without an Order facilitating expedited discovery. *See* [Dkt. 6-2 at ¶¶ 10–11]. And Defendants have a limited expectation of privacy here. The policies of the e-commerce platforms used by Defendants expressly state that subscribers, including Defendants, consent to the disclosure of their personal information to comply with court orders or protect third-party rights. *See* [Dkt. 6 at 15 n.11]. And any privacy interests are outweighed by the pressing need to adjudicate Multipla's claims. *See Gaponyuk v. Alferov*, No. 2:23-CV-01317-KJM-JDP, 2023 WL 4670043, at *4 (E.D. Cal. July 20, 2023) (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information").

Many courts have authorized expedited discovery in copyright infringement claims similar to the one before the Court. *See Strike 3 Holdings, Inc. v. Doe*, 621 F. Supp. 3d 145 (D. Mass. 2022); *Malibu Media, LLC v. Doe*, 308 F. Supp. 3d 235 (D.D.C. 2018); *Malibu Media, LLC v. Doe*, 319 F.R.D. 299 (E.D. Cal. 2016). For these reasons, the Court will allow expedited discovery in this case (properly tailored to the information needed to identify and serve the Defendants).

### IV.   CONCLUSION

For the reasons stated above, Plaintiff Multipla Limited's *Ex Parte* Motion for, and Memorandum in Support of, Entry of a (1) Temporary Restraining Order, (2) Expedited Discovery Order, and (3) Asset Restraining Order [Dkt. 6] is hereby **GRANTED IN PART**.

It is therefore **ORDERED** that

1. Defendants [Dkt. 3], their successors, affiliates, servants, officers, agents, independent contractors, and employees, and anyone acting in active concert or participation with or at the behest or direction of any of the foregoing,[5] be temporarily restrained from:

    a. Using, reproducing, displaying, or enabling others to use, reproduce, or display any copies or derivative works based on Plaintiff's copyrighted works, including, without limitation, the photographs and video appearing in [Dkt. 3-8], other imitations of Plaintiff's Copyright Media, or works that otherwise infringe on Plaintiff's copyright registrations in the Copyright Media, which appear in [Dkt. 3-7];

    b. Moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, from Alibaba, AliExpress, Amazon, CJDropshipping, eBay, Shein, Temu, Walmart, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union;

---

[5] *See* FED. R. CIV. P. 65(d)(2) (providing that temporary restraining orders can bind "the parties," "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with [the foregoing]" if they "receive actual notice of [the order] by personal service or otherwise").

    c. Removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' webstores, websites, assets, operations, or relating in any way to the reproduction and display of the Copyright Media; and

    d. Engaging in any other activity that infringes on Plaintiff's rights in any manner.

2. Each Defendant, within 14 days after receiving notice of this Order, shall serve on Plaintiff a written report under oath providing: (a) their true name and physical address; (b) all websites and online marketplace accounts on any platform that they own and/or operate; and (c) the steps taken by each Defendant to comply with paragraphs 1(a)–(d) above.

3. Plaintiff may immediately commence limited discovery by providing actual notice, pursuant to subpoena or otherwise, of this Order to any of the following parties:

    a. Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them; and

    b. Any banks, savings and loan associations, payment processors, or other financial institutions, including without limitation, Alibaba, AliExpress, Amazon, CJDropshipping, eBay, Shein, Temu, Walmart, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union, or other merchant account provider, payment provider third party processor, credit card association (i.e. MasterCard and VISA) that receive payments or hold assets on Defendants' behalf, as well as any third party service providers, including without limitation, ISPs, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars, domain name registries or online third-party sellers who have provided services for Defendants (all of the foregoing under 3(b), collectively, "Third Party Providers"). The Third Party Providers are ordered to, within 3 business days after receipt of such notice, provide copies of all documents and records in such person or entity's possession or control relating to:

    i. The identities and email addresses of Defendants, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, along with their locations; and

    ii. The identities of Defendants' operations, including without limitation, identifying information associated with the Defendants' financial accounts, and the websites and webstores where Defendants use and have used the Media (the "Infringing Webstores").

4. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained from transferring, disposing of, or secreting any money, stocks, or other assets of Defendants until further ordered by this Court.

5. All Third-Party Providers and their affiliates are ordered to, within 2 business days of receipt of this Order, locate all accounts and funds connected to the Defendants identified in [Dkt. 3] and block all money transfers and funds from being transferred by such Defendants until further ordered by this Court.

6. This Order shall apply to the Infringing Webstores, websites, and any other domain names properly brought to this Court's attention and verified by sworn declaration that verifies such new webstores or domain names are being used by Defendants for the purpose of infringing Plaintiff's Registrations.

7. Defendants' answering papers, if any, shall be filed with the Clerk of this Court and served on the attorneys for Plaintiff by delivering copies thereof to the offices of Scale LLP, 5473 Blair Road, Suite 100, Dallas, Texas 75231, no less than 2 days in advance of the hearing to show cause, with any reply by Plaintiff to be filed and served at the hearing.

  This Temporary Restraining Order without notice shall remain in effect until **June 30, 2025**. No bond shall be required to be posted by Plaintiff. It is further **ORDERED** that a Preliminary Injunction/Evidentiary Hearing is set before this Honorable Court on **June 27, 2025** at 10:00 AM in Courtroom 2, Jack Brooks Federal Courthouse, 300 Willow Street, Beaumont, Texas.

**SIGNED this 16th day of June, 2025.**

                                                           Michael J. Truncale
                                                           United States District Judge